UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>EDCON ENTERPRISES, LLC, d/b/a )<br>GRAND SLAM BAR AND GRILL, and )<br>EDWARD A. PUPILLO, individually, )<br>)<br>Defendants, )<br>)<br>v. )<br>)<br>COMPLETE MUSIC INC., and )<br>DANIEL T. SIMS, individually, )<br>)<br>Third-Party Defendant. ) | Case No. 4:11-CV-1950-JAR |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment [ECF No. 35], Defendants' Motion to Waive Jury Trial [ECF No. 41], and Plaintiffs' Motion to Strike Portions of Defendants' Opposition and Certain Exhibits Submitted by Defendants in Opposition to Motion for Summary Judgment [ECF No. 48].

**I. Background**

This is an action for copyright infringement brought by Plaintiffs Broadcast Music, Inc. and individual copyright owners (collectively referred to as "BMI") pursuant to 17 U.S.C. §§ 101 et. seq. (the "Copyright Act"), against Defendants Edcon Enterprises, LLC ("Edcon") and Edward A. Pupillo ("Pupillo"). BMI is a performing rights society which acquires non-exclusive public performance rights from copyright owners, including music publishing companies and independent composers. The other named Plaintiffs are the copyright owners of the musical compositions which are the subject of this action. Edcon is a limited liability company organized under the laws of

Missouri, which operates, maintains and controls an establishment known as the Grand Slam Sports Bar and Grill ("Grand Slam") in Fenton, Missouri. Grand Slam regularly features performances of live and recorded music. Pupillo is a member of Edcon with a one-hundred percent (100%) ownership interest in Edcon.

BMI alleges seven claims of willful copyright infringement based on Defendants' unauthorized public performance of musical compositions from the BMI repertoire at Grand Slam on the evening of May 14, 2011 and the early morning of May 15, 2011. BMI asserts that the specific acts of copyright infringement alleged in the complaint have caused BMI damage and seeks an order of permanent injunction, statutory damages of $3,500 for each of the seven acts of copyright infringement alleged in the complaint, costs and attorneys fees.

Defendants have filed a Third-Party Complaint against Complete Music, Inc., an event services company that provides disc jockeys, and Daniel T. Sims.[1] Defendants state they engaged Complete Music to perform at Grand Slam, using its own equipment and play lists, based on representations made by its employee, Jason A. Moore, that Complete Music had the appropriate music license agreements. Defendants state they are entitled to recover from Complete Music the entirety of any judgment for BMI against Defendants.

It is undisputed that between February 2010 and June 2011, BMI repeatedly informed Defendants of the need to obtain permission for public performances of copyrighted music, evidenced by some twenty-two letters and sixty telephone calls. (Plaintiff's Statement of Uncontroverted Material Facts, Doc. No. 36, ¶¶ 11, 13, 15, 18-20, 23). BMI offered to grant Defendants a license for the public performances of BMI-licensed musical compositions at Grand Slam, but Defendants did not enter into a license agreement at that time. (Id., ¶ 12). On January 10,

---

[1]Third-Party Defendants filed a Motion to Dismiss for Failure to State a Claim [ECF No. 33] which is addressed in a separate Memorandum and Order.

2012, a cease and desist letter was delivered to Defendants. (Id., ¶ 18). Records indicate that "E. Rupello" signed for the cease and desist letter. (Id., ¶ 19). Pupillo also signed for a letter from BMI dated February 23, 2011. (Id., ¶ 20). Public performances of songs in the BMI repertoire were chronicled by a BMI investigator on the evening of May 14, 2011 and the early morning of May 15, 2011. (Id., ¶ 21). BMI's investigator generated a written report of the songs played at Grand Slam on May 14, 2011 and May 15, 2011, which includes the songs that are the subject of this infringement action. (Id., ¶ 22). Defendants were not licensed by any of the Plaintiffs to publicly perform any of their musical compositions at Grand Slam. (Id., ¶¶ 14, 24).

It is further undisputed that Edcon operates and maintains Grand Slam and has a direct financial interest in Grand Slam. (Id., ¶¶ 26-27). As the owner and managing officer of Edcon, Pupillo has the right and ability to supervise the activities of Edcon as well as a direct financial interest in both Edcon and Grand Slam. (Id., ¶ 29). Pupillo was present at Grand Slam on the evening of May 14, 2011 and the early morning of May 15, 2011. (Id., ¶ 31).

## II. Legal Standard

Summary judgment is proper if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Torgerson v. City of Rochester, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (internal citations and quotation marks omitted). The movant bears the initial burden of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Id. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. Id. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Id. Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge. Id. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Id. Where the record taken as a whole could not permit a jury to find for the nonmoving party, there is no genuine issue for trial.

"The specificity requirement of Rule 56 applies with equal force where the defendant opposes summary judgment, especially where the defendant resists by asserting affirmative defenses which it has a burden to prove." Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir. 2004). As the parties opposing summary judgment in this case, Defendants Edcon and Pupillo have an affirmative burden to identify specific facts in the record showing their defenses raise a triable issue against their liability. Id.

### III. Discussion

### A. Copyright Infringement

To establish a prima facie case for infringement of copyright in musical compositions, a plaintiff must prove the following five elements:

> (1) the originality and authorship of the compositions involved;
> (2) compliance with all formalities required to secure a copyright under Title 17, United States Code;
> (3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action;
> (4) that the compositions were performed publicly for profit [by the defendants]; and
> (5) that the defendants had not yet received permission from any of the plaintiffs or their representatives for such performances.

Lorimar Music A. Corp. v. Black Iron Grill Co, 2010 WL 3022962, * 2-3 (W.D.Mo. July 29, 2012) (citing Collins Court Music, Inc. v. Pulley, 704 F.Supp. 963, 964 (W.D.Mo.1988)).

"A prima facie case as to the first three elements may be made by submitting certified

copies of copyright registration certificates and any subsequent assignments." Id. In support of their Motion for Summary Judgment, BMI has submitted copies of the copyright registration certificates for each composition at issue, as well as any subsequent assignments and other documents which indicate copyright ownership. (Plaintiffs' Memorandum in Support of Motion for Summary Judgment, Doc. No. 37 and attached exhibits, Doc. Nos. 37-2, 37-3, 37-4, 37-5, 37-6). With this evidence, Plaintiffs have proven the first three elements of the five-element test to establish infringement of copyright in musical compositions. Id. (citing Cross Keys Pub. Co., Inc. v. LL Bar T Land & Cattle Co., Inc., 887 F.Supp. 219, 222 (E.D.Mo.1995) (certified copies of copyright registration certificates for each of the songs at issue established validity of plaintiffs' copyrights)).

Plaintiffs have established the fourth element, public performance, with the Certified Infringement Report of Dale Farris, who was retained by BMI to visit Grand Slam and make both a written and digital recording of the music played at the establishment on May 14, 2011. (Doc. No. 37-9, pp. 10-16). Farris' report states that seven songs were played from BMI's repertoire by a Karaoke disc jockey on the night of May 14, 2011 and into the morning hours of May 15, 2011. (Id.). Defendants have not rebutted Farris' evidence, other than to take issue with the estimated occupancy of Grand Slam at 300 persons. "Where no contrary evidence is offered or other evidence exists to create reasonable doubt, an investigator's unrebutted affidavit is prima facie evidence of public performance." Lorimar Music, 2010 WL 3022962, *3 (citing Cross Keys, 887 F.Supp. at 222). Because Defendants have offered no contrary evidence, Farris' uncontroverted certified report satisfactorily proves Defendants publicly performed the songs in question.     The last element is whether Defendants had permission for public performance of the seven songs at issue. "To legally publicly perform copyrighted musical material one must either obtain permission to do so from the owner(s) of the copyrights or from the owner's

- 5 -

representatives." Id. (quoting Collins, 705 F.Supp. at 965). Here, it is undisputed that Grand Slam was not licensed to perform songs in the BMI repertoire, and it did not otherwise obtain permission from the individual copyright owners. For these reasons, the Court finds BMI has established a prima facie case for music copyright infringement.

### B. Liability of Corporate and Individual Defendants

In opposition to BMI's motion, Defendants argue they lacked control over Complete Music's activities on their premises, because they requested Complete Music have the appropriate licensing before agreeing to hire it to perform at Grand Slam. In addition, Defendants argue they did not have a financial interest in the musical performances at Grand Slam because a cover or admission fee was not charged. (Memorandum in Opposition, Doc. No. 45, pp.8-9). "Copyright infringement is in the nature of a tort, and all who participate in the infringement are jointly and severally liable." Lorimar Music, 2010 WL 3022962, *5 (quoting Cross Keys, 887 F.Supp. at 222). The prerequisites for vicarious liability for copyright infringements are: (1) the right and ability to supervise the infringing activity; and (2) an obvious and direct financial interest in exploitation of copyrighted materials. Id. (citing RCA/Ariola Intern., Inc. v. Thomas & Grayston Co., 845 F.2d 773, 781 (8th Cir. 1988)). A proprietor cannot escape vicarious liability for copyright infringement when he has a right to supervise and a financial interest in the performance. Id.

It is undisputed that Edcon owns and operates Grand Slam. Thus, Edcon is liable for the infringing performances. See Cross Keys, 887 F. Supp. at 223. Pupillo's financial interest in the infringements follows directly from Edcon's, since he has a one-hundred percent (100%) ownership interest in Edcon. Applying these uncontroverted facts, Defendants have the requisite

control and financial interest to make them jointly liable for the infringing activities. Lorimar Music, 2010 WL 3022962, *5.

**C. Unclean Hands**

Next, Defendants asserts the affirmative defense of unclean hands.[2] Specifically, Defendants allege BMI's use of a commission-based sales force to sell licensing operates as a disincentive to those employees to determine appropriate licensing fees. (Memorandum in Opposition, Doc. No. 45, p. 9). In other words, BMI's sales force has a "direct financial motive" in overestimating the occupancy of establishments resulting in higher fees. (Id., p. 9-10). Defendants further allege that by mailing proposed license agreements with incorrect occupancy estimates and demanding improperly inflated fees, BMI "comes dangerously close to mail fraud."[3] (Id., p. 10-11). Finally, Defendants argue BMI violated its own consent decree[4] by not

---

[2]The Court assumes Defendants are abandoning the affirmative defenses of license and misuse asserted in their First Amended Answer (Doc. No. 19). As a general rule, the failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of the defense. See e.g., Attorney General of United States v. Irish People, Inc., 595 F.Supp. 114, 120 n. 9 (D.D.C. 1984); Pantry Inc. v. Stop-N-Go Foods, Inc., 796 F.Supp. 1164, 1167-68 (S.D. Ind. 1992). See also Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Ritter, 2011 WL 2491577, *6 (W.D. Mo. June 22, 2011).

[3]In support of this allegation, Defendants rely in part on declarations of Lisa Keller (Doc. No. 45-9) and Jerry Follett (Doc. No. 45-16), and the declaration of Defendant Pupillo (Doc. No. 45-11). BMI objects to the declarations of Keller and Follett because they were not disclosed as required in discovery, and further object to all three declarations because their statements are opinion testimony rather than statements of fact based on personal knowledge. [ECF No. 48] Because the Court's disposition of BMI's motion was not affected by the presence of these declarations, BMI's motion to strike will be denied.

[4]See United States v. Broadcast Music, Inc., 1966 Trade Cas. (CCH) ¶ 71, 941, 83, 323 (S.D.N.Y.1966), *amended,* No. 64–CV–3787, 1994 WL 901652, at *1 (S.D.N.Y. Nov. 18, 1994) (1996–1 Trade Cas. (CCH) ¶ 71, 378). The Decree places a number of specific restrictions on BMI. Defendants appear to be referring to Article VIII of the Decree, which prohibits BMI from discriminating between similarly-situated licensees.

allowing Grand Slam to take a ten percent (10%) discount for timely payment. (Id., p. 11-12).

BMI replies that the defense of unclean hands does not apply where the alleged misconduct is not "directly related to the merits of the controversy between the parties." Saxon v. Blann, 968 F.2d 676, 680 (8th Cir. 1992) (citing Mitchell Bros. Film Group v. Cinema Adult theater, 604 F.2d 852, 863 (5th Cir. 1979)) (Reply Memorandum, Doc. No. 51, p. 4). With regard to occupancy, BMI states it obtained its estimate of 300 from an employee of Grand Slam. Once Defendants provided BMI with evidence that the occupancy estimate provided by their employee was incorrect, BMI made the change. (Id., p. 7). Moreover, BMI's reliance on information provided by Defendants' employee negates essential elements of fraud, including the speaker's knowledge of the falsity and the hearer's reliance thereon. (Id., pp. 8-9). As for the discount for timely payment, BMI states Defendants did not make a timely payment in full; they signed their license agreement and paid on April 16, 2012 for an agreement effective March 1, 2012. (Id., p. 10).

Because none of Defendants' allegations relate to their copyright infringements, their defense of unclean hands fails as a matter of law.

**IV. Relief**

BMI requests injunctive relief, statutory damages for each of the seven claims of infringement, costs and reasonable attorney's fees pursuant to 17 U.S.C. §§ 502, 504, and 505.

**A. Injunctive Relief**

17 U.S.C. § 502(a) provides that "any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff is entitled to a permanent injunction in a copyright action when liability has been established and there is a

"substantial likelihood of future infringements." Cross Keys, 887 F.Supp. at 223. BMI argues injunctive relief is appropriate and necessary in this case "where the Defendants are as yet unlicensed and continue to offer unauthorized performances of the Plaintiffs' music." (Memorandum in Support, Doc. No. 37, p. 11).

Defendants respond that BMI has not established a substantial likelihood of future infringements since as of April 2012, the parties have an executed licensing agreement. (Doc. No. 45-18). As further evidence that they have no inclination to repeat the offense, Defendants state they are also licensed by ASCAP.[5] (Doc. No. 45-7).

While it is true that a voluntary cessation of illegal conduct does not itself render the issue of injunctive relief moot, there must be "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." U.S. v. W.T. Grant Co., 345 U.S. 629, 633 (1953). Defendants have not threatened to persist in or resume the infringing conduct. Moreover, as discussed above, Defendants are now licensed by BMI. Under these uncontroverted facts, the Court finds injunctive relief would be inappropriate in this instance. "When a defendant has ceased its infringing conduct and shows no inclination to repeat the offense, a court may not issue an injunction of the kind [plaintiff] requested. Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc., 821 F.2d 800, 807 (C.A.D.C.1987) (citing Schutt Mfg. Co. v. Riddell, Inc., 673 F.2d 202, 207 (7th Cir.1982); Robert Stigwood Group, Ltd. v. Hurwitz, 462 F.2d 910, 913 (2d Cir.1972).

**B. Statutory Damages**

---

[5]American Society of Composers, Authors and Publishers

- 9 -

Under the Copyright Act, a copyright owner may elect to recover an award of statutory damages instead of actual damages and lost profits. 17 U.S.C. § 504(c)(1). For each non-innocent infringement, the court must award "not less than $750 or more than $30,000 as the court considers just." Id. "Within these statutory limits, the assessment of damages lies within the court's sound discretion and sense of justice." Lorimar Music, 2010 WL 3022962, *6 (quoting Halnat, 669 F.Supp. 933 at 937). In awarding statutory damages, the court may consider the following factors: (1) expenses saved by defendants in connection with the infringements; (2) revenues lost by plaintiffs; and (3) whether the infringement was willful and knowing or accidental and innocent. Casey v. Gentry, 1989 WL 128266, *4 (W.D. Mo. July 10, 1989) (citing Halnat Publishing Co. v. L.A.P.A., Inc., 669 F.Supp. 933, 937 (D. Minn. 1987). Courts generally agree that statutory damages should exceed unpaid licensing fees to emphasize that "it costs less to obey the copyright laws than to violate them." Id. (citing Music City Music v. Alfa Foods, Ltd., 616 F.Supp. 1001, 1003 (E.D.Va.1985)); see also F.W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 233 (1952) (recognizing the statutory rule of copyright policy "is designed to discourage wrongful conduct").

BMI argues the record supports a finding that Defendants deliberately violated BMI's rights. As set forth in the Knipler Declaration (Doc. No. 37-9), between February 2010 and June 2011, BMI repeatedly advised Defendants by letters and telephone of the need to enter into a license agreement. (Id., ¶¶ 3, 5-6, 8, 11). Despite these efforts, a BMI investigator made a written record of the performance of seven (7) BMI-licensed compositions in May 2011. (Id., ¶ 10). Based on this uncontroverted record, BMI states this is clearly a situation where they should be awarded damages well in excess of the statutory minimum. For the seven acts of infringement described in the Complaint, BMI requests a total award of $24,500.00, representing an award of

approximately $3,500.00 for each of the seven (7) infringed works. Because Defendants have not addressed BMI's request for statutory damages in their opposition, the Court will require the parties to submit supplemental briefing on this issue.

### C. Attorneys Fees

17 U.S.C. § 505 provides that "in any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Attorney's fees are routinely awarded to prevailing plaintiffs under the Copyright Act to encourage the prosecution of copyright infringement actions. Micromanipulator Co., Inc. v. Bough, 779 F.2d 255, 259 (5th Cir.1985) ("Although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely.")

BMI argues that an attorney's fee award is appropriate in this case because Defendants intentionally ignored their obligation under the Copyright Act and forced them to engage in litigation to enforce their rights. Counsel for BMI has submitted a declaration setting out the number of hours spent litigating this claim against Defendants, 44.75, and the total lodestar amount for attorney and paralegal time, calculated at the firm's rate, at $11,081.25. (Doc. No. 37-10, Exhibit 5). Because no billing records have been submitted, and because Defendants have not addressed BMI's request for attorneys fees in their opposition, the Court will require the parties to submit supplemental briefing on this issue.

### V. Conclusion

For the foregoing reasons, the Court finds Defendants Edcon Enterprises, LLC, d/b/a/ Grand Slam Bar and Grill, and Edward A. Pupillo jointly and severally liable for seven acts of copyright infringement for the public performance of seven copyrighted musical compositions.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [35] is **GRANTED** in favor of Plaintiffs and against Defendants on the issue of liability. The Motion remains pending to allow the parties an opportunity to submit supplemental briefing on the issues of statutory damages and attorney's fees and costs.

**IT IS FURTHER ORDERED** that Plaintiffs are granted seven (7) days from the date of this Memorandum and Order to supplement their briefing on the issues of statutory damages and attorney's fees and costs. Defendants are granted seven (7) to reply.

**IT IS FURTHER ORDERED** that the jury trial setting of August 20, 2012 is vacated and Defendants' Motion to Waive Jury Trial [41] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Portions of Defendants' Opposition and Certain Exhibits Submitted by Defendants in Opposition to Motion for Summary Judgment [48] is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is set for a hearing on damages on **September 7, 2012** at **10:00 a.m.** in Courtroom 12 N.

Dated this 1st day of August, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE