UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-1950-JAR |
| ) | |
| EDCON ENTERPRISES, LLC, d/b/a ) | |
| GRAND SLAM BAR AND GRILL, and ) | |
| EDWARD A. PUPILLO, individually, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| COMPLETE MUSIC INC., and ) | |
| DANIEL T. SIMS, individually, ) | |
| ) | |
| Third-Party Defendant. ) | |

**MEMORANDUM AND ORDER**

On August 1, 2012, the Court granted summary judgment in favor of Plaintiffs on the issue of liability for copyright infringement and allowed the parties an opportunity to submit supplemental briefing on the issues of statutory damages and attorney's fees and costs. [ECF No. 70] Plaintiffs filed a Supplemental Summary Judgment Brief Regarding Statutory Damages and Attorneys' Fees on August 8, 2012. Defendants filed their Supplemental Brief on August 15, 2012. A hearing on damages was held on October 17, 2012, and evidence was adduced. Defendants' Motion to Strike Plaintiffs' Witness for Failure to Disclose [ECF No. 78] was taken with the case.

**Background**

The factual background of this copyright infringement action is set forth in the Court's August 1, 2012 Memorandum and Order. Briefly, the Court ruled that Defendants Edcon Enterprises, LLC, d/b/a/ Grand Slam Bar and Grill, and Edward A. Pupillo, are jointly and severally

liable for seven acts of copyright infringement for the public performance of seven copyrighted musical compositions.

**Discussion**

In its August 1, 2012 Memorandum and Order granting Plaintiffs' motion for summary judgment, the Court denied Defendants' Motion to Waive Jury Trial [41] as moot. As Plaintiffs correctly point out, however, Defendants' motion is not technically moot because Defendants have a right to a jury trial on the issue of damages. See Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 355 (1998). Accordingly, the Court will modify its previous Order and grant Defendants' motion to waive jury trial on the issue of damages.

**A. Defendants' Motion to Strike**

Defendants moved, pursuant to Rules 26 and 37(c)(1) of the Federal Rules of Civil Procedure, to strike Plaintiffs' witness Larry Stevens, Assistant Vice President of General Licensing for BMI, for failure to properly disclose. Defendants stated that Plaintiffs waited until the day before the scheduled hearing to supplement their Rule 26 disclosures and notify them that they intended to call Stevens as BMI's corporate representative. Defendants argued they were prejudiced by the untimely disclosure in that they spent substantial time and resources preparing for the testimony of Paul Knipler, Senior Director of Business Affairs for BMI, and had no opportunity to depose or otherwise assess Stevens' credibility. Plaintiffs responded that Knipler, now retired, had reported to Stevens, and that Stevens also had knowledge and personal involvement with this matter. Because the issue for the Court was one of prejudice, the Court allowed Stevens to testify and took the motion with the case. The motion will be denied based on the Court's determination that Defendants were not prejudiced by the late disclosure. Steven's testimony was based on his review of BMI's files and records, Knipler's deposition testimony, and his own personal knowledge. There was no

suggestion made by Defendants that Knipler would have testified differently than Stevens. Moreover, the Court permitted Defendants to submit the transcripts of Knipler's depositions.

**B. Statutory Damages**

Under the Copyright Act, 17 U.S.C. § 504(a), an infringer of a copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, or (2) statutory damages. The measure of damages is elected by the copyright owner. § 504 (b) and (c). Here, Plaintiffs have elected to seek statutory damages. 17 U.S.C. § 504 (c) provides that a copyright owner may recover an award of statutory damages, with respect to any one work, "in a sum not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Plaintiffs request an award of $5,000.00 for each of the seven infringed works, for a total award of $35,000.00. [1] (Plaintiffs' Supplemental Summary Judgment Brief, Doc. No. 72, p. 5)

The amount of statutory damages depends in large part on whether the infringement was innocent or willful. 17 U.S.C. § 504(c)(1)-(2). In cases of willful infringement, the court may in its discretion increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. § 504(c)(2). If, on the other hand, the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," the court may reduce the award of statutory damages to a sum of not less than $200. Id. Although the amount of damages awarded must fall within the statutory limits, the Court is afforded wide and almost exclusive discretion in determining the size of a statutory damage award in a copyright infringement case. Lorimar Music A. Corp. v. Black Iron Grill Co., 2010 WL 3022962, *6 (W.D. Mo. July 20, 2010).

Among the factors the Court may consider in awarding statutory damages are: "(1) the expenses saved and profits reaped by defendants in connection with the infringement; (2) revenues

---

[1] In their Motion for Summary Judgment, Plaintiff sought $3,500 in statutory damages for each of Defendants' seven copyright infringements.

lost by plaintiffs; and (3) whether the infringement was willful and knowing or accidental and innocent." Cross Keys Publishing Co., Inc. v. LL Bar T Land & Cattle Co., Inc., 887 F.Supp. 219, 224 (E.D. Mo. 1995). Another relevant factor for the Court to consider is the size and nature of the defendant's business. In Broadcast Music, Inc. v. DeGallo, Inc., 872 F.Supp. 167 (D. N.J. 1995), the district court observed that the Copyright Act "was designed to deal with infringers ranging from relatively small nightclubs, such as the one presented here, to large scale pirates, broadcasting across the country on electronic media. With due allowance for the level of culpability involved, the penalty must be proportionate to the extent of the infringement." Id. at 169.

With regard to profits and losses associated with Defendants' infringements, BMI claims $1,917.48 in lost licensing fees, which amount represents an annual license fee of $958.74 for the two-year period from February 2010-February 2012. (Plaintiffs' Supplemental Summary Judgment Brief, Doc. No. 72, pp. 3-4) Defendants executed a license agreement with BMI in April 2012. No evidence was presented as to Defendants' profits.

With regard to the willfulness of the infringements, the evidence presented establishes that beginning in February 2010, BMI offered to grant Defendants a license for the public performances of BMI-licensed musical compositions at Grand Slam, but Defendants did not enter into a license agreement at that time. Then between February 2010 and June 2011, BMI sales and licensing representatives sent some twenty-four letters and called Defendants sixty times in an effort to convince them to enter into a licensing agreement for the music performed at Grand Slam, or to cease using the compositions owned by Plaintiffs. Stevens testified that BMI attempted to set up a meeting with Defendant Pupillo, but he never came in to talk. Despite all of these efforts, a BMI investigator made a written record of the performance of seven (7) BMI-licensed compositions in May 2011. By letter dated June 2, 2011, BMI notified Defendants that a copyright infringement had

occurred on the premises of Grand Slam and demanded payment in the amount of $5,026.08 for two years of license fees and music researcher costs.

Defendant Pupillo did not respond to any of BMI's letters or phone calls. He testified that because he had licensing agreements with other performing rights groups, namely ASCAP and TouchTunes, a background music service, he assumed he did not need to respond to BMI, and that the whole thing was a "scam." He also testified that if BMI wanted to do business with him, they should have come to him. It was Pupillo's testimony that he thought that by engaging Complete Music and disc jockey Jason Moore, he would not have any issues with BMI because Moore told him he had all the licenses he needed to perform.

While his initial refusal to respond to BMI may have come from ignorance of the complexities of copyright law, Pupillo admitted he did not do any research or consult with an attorney as to whether he needed a license from BMI. In determining whether a defendant has acted willfully for purposes of 17 U.S.C. § 504 (c), knowledge of infringement need not be proven directly. Knitwaves, Inc. v. Lollytogs Ltd., Inc., 71 F.3d 996, 1010 (2d. Cir. 2005) (quoting N.A.S. Import Corp. v. Chenson Enterprises, Inc., 968 F.2d 250, 252 (2d Cir. 1992)). Reckless disregard of the copyright holder's rights is sufficient to prove willfulness and may be inferred from the defendant's conduct. Id. (citing RCA/Ariola International, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988)). See also Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263-64 (2d Cir. 2005) (willful blindness to copyright holder's rights sufficient to prove willfulness); Twin Peaks Prods., Inc. v. Publications International, Ltd., 996 F.2d at 1382 (stating that "[t]he standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility"). The Court concludes that at a minimum, Pupillo's actions in repeatedly ignoring BMI's letters and phone calls constitute reckless disregard for Plaintiff's copyrights sufficient to support a finding of willfulness.

Defendants argue BMI is a sophisticated business entity that uses its specialized knowledge of copyright law to coerce small businesses into paying inflated fees. (Defendants' Supplement Summary Judgment Brief, Doc. No. 73, p. 1) It was Stevens' testimony that BMI uses a standard form licensing agreement and does not negotiate its licensing fees. However, Stevens also testified that when an establishment supplies BMI with official documentation, BMI will correct an inaccurate occupancy load.

Defendants' witness Jerry Follett, general manager of Hessler's Pub, testified that BMI had initially demanded $3,000 in licensing fees by overestimating the occupancy rate of the bar. The original license agreement provided for a $3,000 license fee based on an occupancy of 300, when the actual occupancy is much less. Follett testified he had several discussions with BMI to correct the occupancy rate and work out the details. Hessler's Pub now has a license agreement with BMI and pays a license fee of approximately $390-$400. On cross-examination, Follett acknowledged that BMI had initiated contact with Hessler's Pub and that, unlike Pupillo, he responded.

To assess whether Plaintiffs' requested award of $35,000 is appropriate, the Court is guided by a number of factors including past statutory damages awards. "Courts generally agree that statutory damages should exceed unpaid licensing fees to emphasize that it costs less to obey the copyright laws than to violate them." Sailor Music v. Twister's Iron Horse Saloon, L.C., 2011 WL 3349816, at *2 (E.D. Mo. August 3, 2011) (quoting Lorimar, 2010 WL 3022962, at *2-3)). In support of their request for $5,000 per infringement, Plaintiffs have provided this Court with numerous examples of federal district courts awarding statutory damages on a per-song basis, ranging from $7,000 to as much as $15,000 per infringement. (Supplementary Brief, p. 6) In light of these precedents, Plaintiffs contend their request for $5,000 per infringement is reasonable and appropriate.

Awards in other cases have been based on a multiplier of lost licensing fees, typically three times the amount the defendant would have paid if the defendant had properly obtained a license. Bertram Music Co. v. P & C Enterprises, Inc., 2011 WL 2633666, at *12 (C.D. Ill. July 5, 2011). See also Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F.Supp. 656, 660 (S.D. N.Y. 1996) (summarizing statutory damages awards on a multiplier of lost licensing fees). Again, the rationale behind this defacto treble damages award is "to put defendants on notice that it costs less to obey the copyright laws than to violate them." Broadcast Music, Inc. v. Pub Dayton, LLC, 2011 WL 2118228, at *4 (S.D. Ohio May 27, 2011). For example, in Gnat Booty Music v. Creative Catering of Wadhams, LLC, 761 F.Supp.2d 604, 610 (E.D. Mich. January 6, 2011), the court awarded statutory damages of $12,000, approximately three times the $4,000 license fee. Similarly, in Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1229 (7th Cir.1991), the court upheld the district court's award of statutory damages of $40,000, an amount equal to approximately "three times" the amount due under a past licensing agreement.

Plaintiffs seek an award of $35,000, an amount well in excess of the general trend of awarding damages of approximately three times the licensing fee. As discussed above, "the penalty must be proportionate to the extent of the infringement." DeGallo, 872 F.Supp. at 169. The Court is mindful that the statutory damages rule is designed to deter wrongful conduct; however, given the nature and size of Grand Slam, a small neighborhood bar with a capacity of 174 persons, it appears to the Court that Defendants' infringement was relatively small and not large-scale piracy. Moreover, within months of this action being filed, Defendants entered into a licensing agreement with BMI for a fee substantially less than BMI's initial offer.

The Court has considered all of the evidence presented and concludes that a proper award of statutory damages in this case is $5,950, or $850 for each of the seven acts of copyright infringement. While this is less than Plaintiffs have requested, it is just slightly less than three times

the estimated license fees which would have been owed by Defendants, and the Court finds this award satisfies the compensatory and deterrent goals of the Copyright Act.

**Attorneys Fees and Costs**

17 U.S.C. § 505 provides that "in any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Attorney's fees are routinely awarded to prevailing parties under the Copyright Act to encourage the prosecution of copyright infringement actions. Casey v. Gentry, 1989 WL 128266, at *5 (W.D. Mo. July 10, 1989) (quoting Micromanipulator Co., Inc. v. Bough, 779 F.2d 255, 259 (5th Cir. 1985)).

Because the Eighth Circuit has not adopted a definitive standard for when to award attorney's fees under the Copyright Act, see Litecubes, L.L.C. v. Northern Light Products, Inc., 2006 WL 5700252, at *12 (E.D. Mo. August 25, 2006), the Court considers a number of factors including "frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Pinkham v. Camex, Inc., 84 F.3d 292, 294 (8th Cir. 1996) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n. 19 (1994)). The amount of the fee to be awarded is left entirely to the district court's discretion.

Plaintiffs argue that an attorney's fee award is appropriate in this case because Defendants willfully and knowingly disregarded their rights under the Copyright Act and forced them to engage in litigation to enforce their rights. Plaintiffs further argue that many of Defendants' arguments were frivolous and motivated by nothing more than a complaint about BMI's business model. (Supplemental Brief, Doc. No. 72, p. 7) Plaintiffs' counsel has submitted a declaration stating that

his law firm billed Plaintiffs $30,152.50[2] for work performed by one partner, two associates and one paralegal, and for costs of $2,194.24, which includes filing fee, process service, legal research, and costs associated with Defendants' deposition of BMI employee Paul Knipler. The partner's time was billed at $295 per hour, the associates' time was billed at $275 per hour, and the paralegal's time was billed at a rate of $75 per hour. A total of 157 hours was spent representing Plaintiffs in this action. (Declaration of Eric M. Walter, Doc. No. 72-2)

Defendants challenge Plaintiffs' request for attorney's fees on the grounds that it is nearly the size of their requested damages claim; however, a fee award need not be equal or less than the statutory damages amount. Little Mole Music v. Spike Inv., Inc., 720 F.Supp. 751, 757-58 (W.D. Mo. 1989) (citations omitted). This comports with the policy behind the Copyright Act's fee shifting provision, since the actual value of the recovery in copyright infringement actions may not be commensurate with the fees incurred to obtain the recovery. Id. "Without the fee shifting provision, copyright owners would doubtless be exceedingly reluctant to enforce their rights in such cases." Id. Defendants also question whether this action could have been avoided if BMI had properly calculated the license fee at the outset. Finally, Defendants' challenge the amount of attorney's fees when they were only $11,487 at the time Plaintiffs' summary judgment motion was filed in April 2012.

Based on the factors set out above, the Court concludes that Plaintiffs are entitled to an award of their reasonable attorneys fees which the Court determines to be $12,000 plus the full costs

---

[2]According to counsel's declaration, the billable value in attorneys' and paralegal's fees totaled $44,187.50; however, the firm reduced its time entries to either "eliminate redundancy or as a professional courtesy," thereby reducing the billable hours to 143.25. In addition, the firm agreed to a professional discount of $9,441.25. After accounting for adjustments and the professional discount, the total amount billed to Plaintiffs through August 7, 2012 was $30,152.50. (Declaration of Eric M. Walter ("Walter Decl."), Doc. No. 72-2, ¶¶ 12-16) In determining a "reasonable" fee, the actual fee arrangement between client and attorney is immaterial. Pinkham, 84 F.3d at 294.

incurred in this action. The Court has taken into consideration the fact that Defendants are operators of a small business, that the infringement was not "large-scale piracy," and that Defendants came into compliance within months of the lawsuit being filed. At that time Defendants entered into a licensing agreement that was less than half of BMI's original offer.

Accordingly,

**IT IS HEREBY ORDERED** that the Court's August 1, 2012 Memorandum and Order [70] is modified for the limited purpose of granting Defendant's Motion to Waive Jury Trial.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiffs' Witness for Failure to Disclose [78] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded $5,950 in statutory damages ($850 for each of the seven infringements), for which Defendants Edcon Enterprises, LLC, d/b/a/ Grand Slam Bar and Grill, and Edward A. Pupillo, are jointly and severally liable.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded attorneys fees in the amount of $12,000.00, and costs of $2,194.24, for a total award of $14,194.24.


Dated this 14th day of November, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE